IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| GREAT LAKES COMNET, INC.<br>and WESTPHALIA TELEPHONE<br>COMPANY,<br><br>           Plaintiffs,<br><br>     v.<br><br>AT&T CORP.,<br><br>           Defendant. | Case No. _____ |

**COMPLAINT**
**AND DEMAND FOR JURY TRIAL**

Great Lakes Comnet, Inc. ("GLC") and Westphalia Telephone Company ("WTC"), by their undersigned counsel, hereby file this Complaint against AT&T Corp. ("AT&T" or "Defendant") and allege as follows:

### I.   NATURE OF THE ACTION

1. This is an action to recover over $15.4 million in unpaid, unlawfully withheld charges due from Defendant for interstate telecommunications services provided by GLC and WTC to Defendant. The charges at issue are owed to GLC and WTC pursuant to *inter alia* the Communications Act of 1934, as amended, 47 U.S.C. §§ 151 *et seq.* (the "Act" or "Communications Act"), and GLC's and WTC's duly established and effective tariffs for telecommunications services on file with the Federal Communications Commission ("FCC").

2. GLC and WTC are telecommunications carriers that provide intrastate and interstate telecommunications services.

1

3.      GLC owns and operates a "tandem switch," located in Westphalia, Michigan, which, in simple terms, is used to send long distance calls (referred to herein as "call traffic" or "traffic") from the network of one telecommunications carrier to the network of another telecommunications carrier.

4.      Both GLC and WTC own and operate "tandem transport" facilities, which are used to deliver call traffic between GLC's tandem switch and the "end office switches" of local telecommunications service providers – known as local exchange carriers ("LECs") – located throughout Michigan.

5.      By utilizing GLC's tandem switching service along with GLC's and WTC's transport services, interexchange carriers ("IXCs") – commonly referred to as long-distance carriers – are able to exchange traffic with LECs that home on GLC's tandem switch. By using such services, IXCs avoid the expense of having to deploy and maintain the facilities needed to directly connect with each LEC's end office switch that homes on GLC's tandem switch. A depiction of GLC's network design as of September 1, 2014 is illustrated in Exhibit A.

6.      For example, when long distance calls destined for customers of an IXC are routed through the end office switch of a LEC that homes on GLC's tandem switch, GLC and WTC provide the IXC with the ability to receive those calls by routing them over their transport facilities from the LEC's end office switch to GLC's tandem switch. Once those calls reach GLC's tandem switch, GLC performs the switching function and routes them to the appropriate IXC. The services performed by GLC and WTC fall under the general category of services referred to as "switched access" services. In providing switched access services, GLC does not serve, *i.e.*, terminate or originate switched access traffic to or from, end users.

7.      For purposes of this case, where GLC and WTC provide switched access services for interstate call traffic delivered to or from Defendant, GLC's and WTC's tariffs on file with FCC set forth the charges to be paid by Defendant for the tandem switching and transport services rendered.

8.      The following diagram provides an illustrative example of the switched access services provided by GLC and WTC when an end user of a LEC, which is homed on GLC's tandem switch, places a call to a business customer served directly by an IXC:



9.      Defendant AT&T is an IXC. Since approximately December of 2001, Defendant has used GLC's tandem switching service along with GLC's and WTC's transport services to deliver and receive traffic to and from LECs that home on to GLC's tandem switch.

10.     Since 2001, Defendant has ordered and used the interstate switched access services offered by GLC and WTC. The charges billed to Defendant under GLC's and WTC's tariffs were uncontested for many years, and Defendant routinely paid those charges without question, objection or protest.

11. However, in August of 2012, Defendant began withholding a portion of the payment for switched access services, and from March of 2013 through the date of this Complaint, has failed and refused to remit substantial portions, if not all, of the tariffed charges it owes to GLC and WTC. Defendant's legal obligations are clearly established under GLC's and WTC's federal tariffs, established case law, the Communications Act, the implementing rules, orders and policies of the FCC, and applicable state law, and yet Defendant has refused to pay GLC and WTC for switched access services – which Defendant undeniably received – at the rates specified in their tariffs.

12. Defendant is currently in arrears to GLC and WTC in a collective amount of at least $15,415,349.09 for interstate switched access charges and late payment fees owed pursuant to GLC's and WTC's tariffs. This amount is the sum of outstanding invoiced charges during the period beginning August 1, 2012 through February 10, 2015. This amount continues to accrue after the filing of this Complaint, for switched access services that Defendant has undeniably received, and continues to receive, from GLC and WTC. GLC and WTC thus bring this action to recover the amounts owed for the switched access services performed by them, at their expense, and for the benefit of Defendant.

## II. PARTIES

13. Plaintiff GLC is a Michigan corporation with its principal place of business located at 1515 Turf Lane, East Lansing, Michigan.

14. Plaintiff WTC is a Michigan corporation with its principal place of business located at 109 E. Main Street, Westphalia, Michigan.

15. On information and belief, Defendant AT&T Corp. is a New York corporation with its principal place of business located in Bedminster, New Jersey. Defendant is an

interexchange carrier ("IXC") and a common carrier subject to the provisions of the Act. 47 U.S.C. § 151 *et seq*. At all relevant times, Defendant provided, and provides, services in this judicial district and its common carrier lines ran, and run, through this judicial district.

### III.   JURISDICTION AND VENUE

16.   This is an action to recover amounts due under, *inter alia*, GLC's and WTC's tariffs filed with the FCC pursuant to the Communications Act.  Defendant's obligation to make payments to GLC and WTC under their tariffs arises under federal law, including without limitation §§ 201 and 203 of the Act.  GLC and WTC are authorized to seek recovery of such payments in this Court under § 207 of the Act.  Accordingly, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C §§ 1331 and 1337.

17.   This Court's jurisdiction over actions for collection of tariffed charges such as this has been confirmed in decisions such as in *U.S. TelePacific Corp. v. Tel American of Salt Lake City, Inc*., 19 FCC Rcd. 24552, 24555, ¶ 8 (2004), in which the FCC held that "[t]he proper forum [for recovery of unpaid access charges that are allegedly due under the terms of a federal tariff] is the federal district court." *See also Petition for Declaratory Ruling Regarding Enhanced Prepaid Calling Card Services*, 20 FCC Rcd. 4826, 4835 n.58 (2005) ("[t]he Commission has held that it does not act as a collection agent for carriers with respect to unpaid tariff charges.") (citations omitted); *All American Tel. Co. v. AT&T Corp.*, Memorandum Opinion and Order, 26 FCC Rcd 723, at n.32 & ¶ 14 (2011), *pet. for recon denied*, 28 FCC Rcd 3469 (2013).

18.   This Court has supplemental jurisdiction over GLC's and WTC's state law claims pursuant to 28 U.S.C. § 1367, which are plead in the alternative below..

19.   GLC and WTC's claims for declaratory relief are cognizable under 28 U.S.C. §§ 2201 and 2202.

5

20. Venue is proper in this judicial district under 28 U.S.C. § 1391 as, *inter alia*, (a) Defendant "resides" in this District due to its contacts with this District, its transaction of business in this District, and its having submitted to the jurisdiction of the courts in this District and (b) a substantial part of the events, acts and omissions giving rise to GLC's and WTC's claims occurred within this District.

## IV.   FACTUAL BACKGROUND

### A.   *GLC's and WTC's Services and Tariffs*

21. GLC and WTC have lawful tariffs on file with the FCC that establish the rates and terms under which GLC and WTC offer interstate switched access services. Where GLC and WTC provide such services to an IXC, such as Defendant, the IXC is obligated to pay GLC and WTC pursuant to the rates and terms established in their tariffs.

22. Interstate switched access services are offered by GLC under GLC's interstate access tariff, Great Lakes Comnet, Inc. Tariff F.C.C. No. 20 ("GLC Tariff" or "GLC Tariff F.C.C. No. 20").

23. Interstate switched access services are offered by WTC pursuant to the National Exchange Carrier Association, Inc. Tariff F.C.C. No. 5 ("NECA Tariff" or "NECA Tariff F.C.C. No. 5") (the GLC Tariff and NECA Tariff collectively referred to as the "Tariffs").

24. The Tariffs separately define, among other things, each of the rate elements that comprise the overall switched access services offered by each company. For each rate element, the Tariffs contain an associated rate. The rate elements at issue in this case are those associated with Tandem Switched Transport under the Tariffs. The Tandem Switched Transport rate elements are associated with a communications path between a tandem and end office for call traffic that is switched at GLC's tandem switch.

25. For instance, when a long distance call is routed from the end office of a LEC that homes on GLC's tandem switch to an IXC, the following Tandem Switched Transport rate elements apply: (1) Tandem Switched Facility, (2) Tandem Switched Termination, and (3) Tandem Switching.  These rate elements are generally described below:

    a. Tandem Switched Facility is a distance-based rate element assessed on a per-mile, per-minute basis for the transmission of the call from the LEC end office switch to the GLC tandem switch.

    b. Tandem Switched Termination is a rate element assessed on a per-minute basis, which provides for the termination of traffic at each end of route associated with the Tandem Switched Facility.

    c. Tandem Switching is a rate element assessed on a per-minute basis for switching traffic through GLC's tandem switch.

26. One of the LECs, which is a competitive LEC ("CLEC"), that had an end office that homed on GLC's tandem switch is known as Local Exchange Carriers of Michigan, Inc. ("LECMI").[1]  The tariffed charges that applied to the route connecting LECMI's end office switch and GLC's tandem switch (the "LECMI Route") is the central issue in this action, although some of the charges at issue relate to traffic received from or sent to other CLECs.

27. As an illustrative example, a detailed call flow diagram showing the specific tariffed rate elements, *i.e.*, Tandem Switched Facility, Tandem Switched Termination, and Tandem Switching, that applied during a substantial portion of the period in dispute for switched

---

[1] As of September 19, 2014, LECMI is no longer homing on or sending any traffic to GLC's tandem switch, because LECMI is now homing on the tandem switch of another carrier and, therefore, LECMI is sending its long distance traffic there instead.

access services GLC and WTC provided to Defendant over the LECMI Route is set forth in Exhibit B.

### B. *Defendant Ordered Switched Access Services from GLC and WTC*

28.     Defendant has ordered and used the switched access services provided by GLC and/or WTC since the GLC tandem switch was first deployed in December of 2001. Since that time, Defendant has used the switched access services provided by GLC and WTC to exchange long distance traffic with many LECs.

29.     For over ten years, from approximately October 21, 2003 to September 18, 2014, the LECMI Route had been in effect and published in the Local Exchange Routing Guide ("LERG").

30.     The LERG is a national database of routing information that is currently maintained by iconectiv. The LERG is primarily designed to be used for the routing of calls by service providers, including but not limited to Defendant, LECMI, WTC, and GLC. It also supports functions such as networking, planning and engineering, and numbering administration, and is used by companies, including many outside of the telecommunications industry, to support a wide range of business operations and planning needs.[2] The LERG has been in existence since 1984, and provides a common basis for service providers to directly report their numbering and routing information. By publishing its routes in the LERG, LECs – such as LECMI – give other carriers, including Defendant, actual and constructive notice of their designated route.

31.     Since approximately October 21, 2003 to September 18, 2014, Defendant has been on actual and/or constructive notice of the LECMI Route and that LECMI's end office

---

[2] *See* http://www.trainfo.com/products_services/tra/catalog_details.html.

switch, which is located in Southfield, Michigan and owned and operated by LECMI, homed on GLC's tandem switch.

32. Throughout all relevant time periods, Defendant has routinely ordered switched access services from GLC and WTC by submitting Access Service Requests ("ASRs") – an industry standard form submitted to a switched access service provider specifically for the ordering of such services pursuant to the rates, terms, and conditions of the provider's tariff – to GLC.

33. The requests for service set forth in the ASRs submitted by Defendant to GLC covered, among other routes, the LECMI Route.

34. Further, by routing traffic to and from LECMI and other CLECs that home on the GLC tandem switch, Defendant constructively ordered switched access services from GLC and WTC, and consented to exchange traffic with LECMI and other CLECs via GLC's and WTC's switched access services, pursuant to the rates and terms of GLC's and WTC's Tariffs.

*C. Defendant's Failure to Pay for Switched Access Services Provided by GLC and WTC*

35. For over ten years, GLC and WTC have provided switched access services to Defendant – including the Tandem Switched Facility, Tandem Switched Termination, and Tandem Switching rate elements described above – for calls that were routed from the end offices of LECs, including but not limited to LECMI, that home on GLC's tandem switch.

36. Pursuant to the Tariffs, WTC is the entity that generates and distributes monthly invoices to Defendant on behalf of GLC and WTC for the switched access services they provided. For purposes of this case, upon providing such switched access services to Defendant, WTC rendered monthly invoices to Defendant for the services provided by GLC and WTC, among other things.

37. For time periods up through and including July of 2012, Defendant remitted payment to GLC and WTC for the switched access services they provided to Defendant, including but not limited to services provided over the LECMI Route.

38. However, in August of 2012, Defendant began withholding a portion of the tariffed charges billed for the switched access services provided by GLC and WTC to Defendant. Further, since March of 2013, Defendant has failed and refused to remit substantial portions, if not all, of the tariffed charges billed for the switched access services that Defendant undeniably received from GLC and WTC.

39. In addition to materially breaching its obligation to pay for the switched access services pursuant to GLC's and WTC's Tariffs, Defendant has also failed to properly dispute the withheld charges in accordance with the terms of WTC's Tariff. For example, while WTC's Tariff required Defendant to, *inter alia*, identify "in detail" the basis for any dispute, Defendant failed to provide the detailed basis for its purported disputes in accordance with WTC's Tariff, thereby providing insufficient basis for WTC and GLC to investigate the merits of the purported dispute.

40. While Defendant has failed and refused to pay for GLC's and WTC's services at the rates specified in GLC's and WTC's Tariffs, Defendant has, on information and belief, billed its long-distance customers for the calls that GLC and WTC have processed for Defendant. Thus, on information and belief, Defendant has received revenues from its long-distance customers for completing the calls through the use of GLC's and WTC's switched access services.

41. Where Defendant fails to pay lawfully invoiced amounts by the due date specified in GLC and WTC's Tariffs, such amounts are – pursuant to the terms of GLC's and WTC's

Tariffs – subject to late payment charges. These late payment charges continue to compound and accrue on a monthly basis until all past due amounts are paid.

42. Having failed to pay GLC and WTC for the switched access services rendered according to the rates established in their Tariffs, Defendant is currently in arrears to GLC and WTC in the amount of at least $15,415,349.09 for interstate switched access charges and late payment fees owed pursuant to their Tariffs. This amount reflects invoices that have become due as of August 1, 2012 through February 10, 2015. As GLC and WTC continue to provide switched access service to Defendant, and Defendant continues to refuse to pay for these services at the rates set forth in GLC's and WTC's Tariffs, the amounts owed by Defendant to GLC and WTC continue to accrue.

### *D. Decision of the Michigan Public Service Commission and Other Related FCC Proceeding*

43. Defendant's refusal to pay the invoiced amounts due for the switched access services GLC and WTC rendered led them to file a Formal Complaint before the Michigan Public Services Commission ("MPSC"). While the proceeding before the MPSC relates to *intrastate* switched access charges (which are not at issue under this Complaint, as only *interstate* switched access charges are the subject of this Complaint), the MPSC issued a decision on January 27, 2015 that completely rejected Defendant's proffered objections to paying GLC's and WTC's intrastate switched access charges and ordered Defendant to pay GLC and WTC all intrastate charges withheld under GLC's and WTC's intrastate tariffs.[3] A true and correct copy of the MPSC's Order is attached hereto as Exhibit C, which Defendant is appealing.

44. Subsequent to the filing of the Formal Complaint before the MPSC, Defendant filed a Formal Complaint against GLC and WTC before the FCC, under which Defendant raises

---

[3] *In the Matter of the Formal Complaint of Westphalia Telephone Company and Great Lakes Comnet, Inc. against AT&T Corp.*, Order, Case No. U-17619 (Mich. P.S.C., rel. Jan. 27, 2015).

11

objections to GLC's and WTC's *interstate* switched access charges. While the proceeding before the FCC remains pending, the objections raised by Defendant before the FCC are largely the same objections that were rejected by the MPSC.[4]

45. As discussed above, because GLC and WTC cannot pursue collection of tariffed charges from Defendant as part of the FCC proceeding, but may only do so through an action in federal district court, GLC and WTC bring this action to collect the charges owed by Defendant for interstate switched access services, and the charges that continue to accrue.

## COUNT I:
## BREACH OF FEDERAL TARIFF/
## COLLECTION ACTION UNDER THE COMMUNICATIONS ACT

46. GLC and WTC repeat and re-allege the allegations of paragraphs 1 through 45 above as though fully set forth herein.

47. During all relevant time periods referred to herein, GLC and WTC have provided telecommunications services under the Tariffs on file with the FCC.

48. Defendant ordered and/or constructively ordered interstate switched access services under the Tariffs, and GLC and WTC provided such services to Defendant in accordance with the Tariffs.

49. The applicable charges for such services are set forth in the Tariffs.

50. Defendant has a legal duty to pay GLC and WTC for the interstate switched access services received under the Tariffs at the rates set forth therein, but Defendant has failed to pay the full amount of the charges and associated late payment fees owed under the Tariffs. Defendant also had a legal duty under the Tariffs to submit notices of dispute to GLC and WTC

---

[4] *In the Matter of AT&T Services Inc. and AT&T Corp. v. Great Lakes Comnet, Inc. and Westphalia Telephone Company*, File No. EB-14-MD-013 (complaint filed October 23, 2014).

that were compliant with the terms of the Tariffs when withholding payment thereunder, but Defendant failed to do so.

51. As such, Defendant has breached its duties to pay GLC and WTC for such services and to remit notices of dispute compliant with the terms of the Tariffs, and has violated federal law, federal regulations and/or FCC orders.

52. As a result of Defendant's breach of duty and violation of law, GLC and WTC have been, and continue to be, damaged. GLC and WTC are entitled to recover the amounts owed pursuant to the Tariffs, and such other damages as may be established at trial.

## COUNT II:
## BREACH OF CONTRACT

53. GLC and WTC repeat and re-allege the allegations of paragraphs 1 through 52 above as though fully set forth herein.

54. This claim is alleged in the alternative to the preceding claim, in the event that the court does not find that GLC and WTC are entitled to enforce an express obligation under GLC's and WTC's Tariffs.

55. GLC, WTC, and Defendant are sophisticated corporate entities that are competent to enter into an enforceable contract.

56. GLC and WTC offered switched access services under the rates and terms set forth in their Tariffs, of which Defendant was on notice.

57. Defendant accepted GLC's and WTC's offer by, *inter alia*, submitting orders, including ASRs, to GLC and WTC that requested switched access services from GLC and WTC and/or routing traffic to and from GLC's tandem switch.

58. Defendant used the services offered by GLC and WTC under their Tariffs to complete its customers' interstate interexchange telephone calls, and received revenues from its long distance customers for providing this service.

59. As such, there exists an enforceable contract between the parties, under which Defendant agreed to pay GLC and WTC for the provision of switched access services at the rates and terms set forth in the Tariffs and agreed to remit notices of dispute compliant with the terms of the Tariffs when withholding any payment for such services.

60. Defendant breached the contract between the parties by failing to pay for the services provided by GLC and WTC at the rates set forth in the Tariffs and by failing to remit notices of dispute compliant with the terms of the Tariffs when withholding payment for such services.

61. As a result of Defendant's breaches of contract, GLC and WTC have been, and continue to be, damaged. GLC and WTC are entitled to recover the amounts owed pursuant to the contract, and such other damages as may be established at trial.

## COUNT III:
## BREACH OF IMPLIED-IN-FACT CONTRACT

62. GLC and WTC repeat and re-allege the allegations of paragraphs 1 through 61 above as though fully set forth herein.

63. This claim is alleged in the alternative to each of the preceding claims, in the event that the court does not find that GLC and WTC are entitled to enforce an express obligation under tariff or contract.

64. GLC and WTC offered interstate switched access service to Defendant.

65. Defendant, by its conduct, accepted GLC's and WTC's offer by submitting ASRs to GLC and by intentionally directing traffic to and accepting traffic from GLC and WTC.

Defendant knew GLC and WTC would perform interstate switched access services on Defendant's behalf to complete the telephone calls associated with this traffic.

66. By its conduct, Defendant purchased interstate switched access services from GLC and WTC as an input to the long-distance service Defendant provides to its end user customers.

67. Defendant has used GLC's and WTC's interstate switched access services and facilities to deliver calls to and from Defendant's end users. Defendant received revenues from its long-distance customers for completing these calls.

68. GLC and WTC provided, and continue to provide, valuable interstate switched access services to Defendant.

69. Defendant accepted, used, benefited from, and enjoyed the interstate switched access services that GLC and WTC provided to Defendant.

70. Defendant knew that interstate switched access charges are assessed when Defendant obtains interstate switched access services from other carriers.

71. Defendant knew GLC's and WTC's rates and other terms under which GLC and WTC provided service, as set forth in their Tariffs for interstate switched access services. Defendant was charged such rates for the interstate switched access services that GLC and WTC provided and continue to provide to Defendant.

72. At all times, it was foreseeable that GLC and WTC expected to be compensated fully for the interstate switched access services GLC and WTC provided and continue to provide to Defendant at the rates set forth in GLC's and WTC's Tariffs. At all times, it was also foreseeable that GLC's and WTC's ability to provide switched access services to Defendant relied upon Defendant's compliance with the terms of the Tariffs governing notices of dispute.

73. At all times, Defendant knew that by intentionally directing traffic to and receiving traffic from GLC and WTC, GLC and WTC expected to be fully compensated for the interstate switched access services GLC and WTC provided and continue to provide to Defendant at the rates set forth in GLC's and WTC's Tariffs. At all times, Defendant also knew that GLC and WTC expected that Defendant would remit notices of dispute compliant with terms of the Tariffs to GLC and WTC when withholding payment for interstate switched access services.

74. Defendant has breached its obligations by failing to pay the interstate switched access charges and associated late payment charges that it owes to GLC and WTC and by failing to remit notices of dispute compliant with terms of the Tariffs when withholding payment for such services.

75. GLC and WTC have been, and continue to be, damaged, directly and consequentially, by Defendant's refusal to pay the interstate switched access charges it owes, plus late payment penalties. GLC and WTC are entitled to recover these amounts, and/or such other damages, as may be determined by this Court.

### COUNT IV:
### UNJUST ENRICHMENT, QUANTUM MERUIT, AND
### BREACH OF IMPLIED-IN-LAW CONTRACT

76. GLC and WTC repeat and re-allege the allegations of paragraphs 1 through 75 above as though fully set forth herein.

77. This claim is alleged in the alternative to each of the preceding claims, in the event that the court does not find that GLC and WTC are entitled to enforce an obligation as alleged in any one or more of the preceding claims.

78. From approximately August 2012 through the present date, GLC and WTC provided valuable interstate access services to Defendant.

79. Defendant accepted, used, and enjoyed the interstate access services that GLC and WTC provided to Defendant.

80. On information and belief, Defendant completed long distance calls for its customers using the switched access services it obtained from GLC and WTC, and received revenues from their long distance customers for completing these calls.

81. Defendant's receipt of the switched access services and enrichment of revenues from its customers were obtained at the expense of GLC and WTC. Accordingly, by obtaining the benefit of these services, Defendant has been enriched.

82. The reasonable and fair market value of the services for which Defendant has refused to pay equals the amount of the unpaid invoices described above.

83. It is against equity and good conscience to permit Defendant to reap the benefits of the services performed by GLC and WTC and retain the revenues from its customers without due compensation.

84. Defendant has been, and will continue to be, unjustly enriched unless it is required to pay an amount equal to the unpaid invoices described above. GLC and WTC are entitled to recover these amounts, and/or such other damages, as may be determined by this Court.

## COUNT V:
## DECLARATORY JUDGMENT

85. GLC and WTC repeat and re-allege the allegations of paragraphs 1 through 84 above as though fully set forth herein.

86. A present, actionable, and justiciable controversy exists with respect to the legal rights between the parties. Such controversy arises under the Communications Act and under the laws of the United States.  GLC and WTC cannot obtain relief other than through litigation.

87. Defendant's refusal to pay the tariffed charges for the use of GLC's and WTC's switched access services and Defendant's refusal to pay associated late payment fees are ongoing and repeated practices.

88. On information and belief, absent a declaratory judgment, Defendant will continue its wrongful practices of refusing to pay interstate switched access charges and late payment fees for these services from which it benefits.

89. It would be unduly burdensome and inefficient for GLC and WTC to bring new actions for damages each time Defendant wrongfully refuses to pay an invoice or refuses to provide notices of dispute compliant with the Tariffs when withholding payment thereunder.

90. Accordingly, GLC and WTC is entitled to a declaratory judgment and such further relief based upon that declaratory judgment as the Court deems proper, pursuant to 28 U.S.C. § 2201 and 2202, determining as follows:

   a. GLC and WTC have lawfully charged Defendant for services rendered in the provision of interstate switched access service, either pursuant to GLC's and WTC's effective and duly filed Tariffs, or in accordance with the principles of equity.

   b. Defendant has violated GLC's and WTC's effective and duly filed Tariffs and/or principles of equity, by (1) refusing and failing to pay GLC and WTC for interstate switched access services and associated late payment fees and (2) refusing and failing to remit notices of dispute compliant with the terms of

    the Tariffs when withholding payment for services, either as set forth in the Tariffs or as established as a matter of equity.

  c.  Defendant is obligated to make timely payment of these charges and late fees as said charges become due.

## PRAYER FOR RELIEF APPLICABLE TO ALL COUNTS

**WHEREFORE**, based on the foregoing, GLC and WTC respectfully request that this Court enter judgment against:

1) For all damages incurred by GLC and WTC, in an amount to be determined at trial, but no less than the switched access service charges that Defendant owes GLC and WTC at the rates set forth in their Tariffs, together with associated late fees and prejudgment interest;

2) For GLC's and WTC's reasonable attorneys' fees and the costs of this action; and

3) For such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs GLC and WTC hereby demand a jury trial as to all claims in this action triable by jury.

    Respectfully Submitted,

    **GREAT LAKES COMNET, INC**.

    **WESTPHALIA TELEPHONE COMPANY**

Dated: February 27, 2015    By:<u>/s/ Jeffrey S. Theuer (P44161)</u>
    Jeffrey S. Theuer (P44161)
    Michael A. Holmes (P24071)
    Michael G. Oliva (P29038)
    Leah Brooks (P72811)
    ***Loomis, Ewert, Parsley***
     ***Davis & Gotting, P.C.***
    124 W. Allegan, Suite 700
    Lansing, MI 48933
    (517) 482-2400
    Attorneys for Plaintiffs

                                                Philip J. Macres
                                                ***Klein Law Group*** PLLC
                                                (pro hac vice motion or petition for
admission to court to be filed)
1250 Connecticut Avenue, N.W., Ste. 200
Washington, D.C.  20036
(202) 289-6956
Attorneys for Plaintiffs